# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEADOWGATE TECHNOLOGIES, LLC, <br><br> Plaintiff, <br> vs. <br> FIASCO ENTERPRISES, INC., d/b/a ENERGY TRANSPORT LOGISTICS, LLC <br><br> Defendant. | CASE NO. 17cv230-LAB (KSC) <br><br> **ORDER GRANTING MOTION TO DISMISS** |

This case concerns cargo theft by an unknown party in which the two parties were allegedly unwitting dupes. The specific issue to be decided is which of them must bear the loss. Meadowgate Technologies alleges that it sent some computer parts to an address in California in response to what it believed were three separate purchase orders from its customer, Batelle. The address was actually the address of Defendant Fiasco Enterprises, doing business as Energy Transport Logistics, LLC ("ETL"). ETL in turn received routing instructions for the freight that it believed came from its customer Mitchell Brothers Truck Line. ETL sent the cargo overseas to the U.K., South Africa, and other countries. Later, it turned out, the orders and instructions had not come from Batelle or from Mitchell Brothers but from some unknown third party or parties (the "Unknown Party"), who apparently was behind the fraud. Meadowgate wants ETL to pay, and ETL thinks Meadowgate should bear the loss.

Meadowgate amended its complaint once, to allege diversity jurisdiction. (Docket no. 4, "FAC"). The FAC brings claims for conversion, negligence, and unjust enrichment under California law. Then ETL moved to dismiss. ETL's motion argues that Meadowgate's claims are preempted by the federal Carmack Amendment. *See* 49 U.S.C. § 14706(a). This is the sole issue raised. Meadowgate asks that, if the Court finds its state-law claims preempted, that it be allowed to re-plead, and ETL has agreed to this. The Court heard argument, took the motion under submission, and is now prepared to rule on it.

**Discussion**

### Legal Standards

The motion to dismiss is brought under Fed. R. Civ. P. 12(b)(6). The court must therefore assume the truth of all factual allegations and must construe them in the light most favorable to the nonmoving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir. 1996). Dismissal is warranted where the complaint lacks a cognizable legal theory. *Robertson v. Dean Witter Reynolds, Inc.*, 749 F.2d 530, 534 (9th Cir. 1984); *see Neitzke v. Williams*, 490 U.S. 319, 326 (1989) ("Rule 12(b)(6) authorizes a court to dismiss a claim on the basis of a dispositive issue of law"). Alternatively, a complaint may be dismissed where it presents a cognizable legal theory yet fails to plead essential facts under that theory. *Robertson*, 749 F.2d at 534.

The pleading standard is governed by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009). A complaint must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" and its factual allegations must "raise the right to relief above a speculative level." *Twombly*, 550 U.S. at 555. The complaint must contain enough factual allegations that, accepted as true, would state a claim for relief that is "plausible on its face." *Iqbal*, 556 U.S. at 678.

The Carmack Amendment, enacted in 1906, "established a national liability policy for interstate carriers." *Hughes Aircraft Co. v. N. Am. Van Lines, Inc.*, 970 F.2d 609613 (9th Cir. 1992). *See also Hoskins v. Bekins Van Lines*, 343 F.3d 769, 778 (5th Cir. 2003) ("Congress intended for the Carmack Amendment to provide the exclusive cause of action for loss or

damages to goods arising from the interstate transportation of those goods by a common carrier." (emphasis omitted)). The amendment "embraces the subject of the liability of the carrier under a bill of lading which he must issue, and limits his power to exempt himself by rule, regulation, or contract." *Adams Express Co. v. Croninger*, 226 U.S. 491, 505 (1913). "It is well settled that the Carmack Amendment is the exclusive cause of action for interstate-shipping contract claims alleging loss or damage to property." *Hall v. N. Am. Van Lines, Inc.*, 476 F.3d 683, 688 (9th Cir. 2007). This includes even a number of types of related claims. *See id.* at 68–89 (citing cases).

The Carmack Amendment's preemption has been recognized as broad. *See Bullocks Express Transp., Inc. v. XL Specialty Ins. Co.*, 329 F. Supp. 2d 1246, 1253 (D. Utah 2004). For example, courts have treated even claims for conversion as subject to defensive preemption by the Carmack Amendment. *See Hall*, 476 F.3d at 689 ("It is well settled that the Carmack Amendment constitutes a complete defense to common law claims alleging all manner of harms.") Litigants have not been permitted to avoid preemption by characterizing claims as claims for conversion rather than under a bill of lading. *See Georgia, Fla. & Alabama Ry. Co. v. Blish Milling*, 241 U.S. 190, 197 (1916).

At the same time, the Carmack Amendment does not purport to regulate all transactions merely because a carrier and a shipper are involved. *See, e.g., Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 382 (5th Cir. 1998) (explaining that the Carmack Amendment does not preempt claims where the shipper "alleges injuries separate and apart from those resulting directly from the loss of shipped property."); *Gordon v. United Van Lines, Inc.*, 130 F.3d 282, 289 (7th Cir. 1997) ("[N]ot every claim even remotely associated with the transfer of goods from one place to another is necessarily a claim for damages to the shippers' goods . . . .") *See also Rini v. United Van Lines*, 104 F.3d 502, 506 (1st Cir. 1997) (giving examples of claims between carrier and shipper that would not be preempted).

/ / /
/ / /
/ / /

The most contentious clauses are part of subsection (a)(1):

> (1) Motor carriers and freight forwarders . . . .The liability imposed under this paragraph is for the actual loss or injury to the property caused by (A) the receiving carrier, (B) the delivering carrier, or (C) another carrier over whose line or route the property is transported in the United States or from a place in the United States to a place in an adjacent foreign country when transported under a through bill of lading and, except in the case of a freight forwarder, applies to property reconsigned or diverted under a tariff under section 13702 . . . .

49 U.S.C. § 14706(a)(1).

**Summary of Argument**

Meadowgate has argued that the Carmack Amendment doesn't apply here, because the ETL wasn't acting as a carrier in this instance. In reply, ETL alleges that it falls within the definition of a transportation service, as defined in 49 USC § 13102(23). Meadowgate also argues that Carmack doesn't apply to international shipments from the U.S. to non-adjacent countries. *See* § 14706(a)(1). It argues ETL was not acting as a carrier when it received freight or when it shipped freight supposedly at Mitchell Brothers' behest, because it did not transport the parts. Meadowgate cites case law in its brief, as well as the definition in 49 U.S. Code § 13102 (14) (A "motor carrier," is a "person providing motor vehicle transportation for compensation.")

In reply, ETL argues that the non-adjacent country argument fails because it applies only to freight transported under a "through a bill of lading". Even if that is so, subsection (a)(1) provides that "Failure to issue a receipt or bill of lading does not affect the liability of a carrier."

**Analysis**

Initially, it is necessary to determine whether the shipping that occurred this case involves a single act that occurred in two sages, or two separate acts. For reasons discussed below, the Court believes treating the two stages of shipment as two separate acts is indicated.

/ / /

/ / /

In the first stage or journey, Meadowgate was induced to ship parts to what it believed was its customer in California. The carriers[1] in that instance were three other companies, FedEx, UPS, and OnTrac. They are not defendants here and Meadowgate does not seek to hold them liable. The parts were delivered to the address Meadowgate provided. (*See* FAC, ¶¶ 9–10.)

Once that happened, the carriers had discharged their duties, and Meadowgate received all the freight transportation services it bargained for. When cargo is successfully delivered as agreed, responsibility under a transportation document (a bill of lading, or some other kind of document) terminates. *See Tokio Marine & Fire Ins. Co., Ltd. v. Chicago & Northwestern Transp. Co.*, 129 F.3d 960, 961 (7th Cir. 1997) (citing *Schiess-Froriep Corp. v. S.S. Finnsailor*, 574 F.2d 123, 127 (2d Cir. 1978) and *Am. President Lines, Ltd. v. Fed'l. Maritime Bd.*, 317 F.2d 887, 888 (D.C. Cir. 1962)). *See also Reider v. Thompson*, 339 U.S. 113 (1950) (treating two non-overlapping bills of lading as two separate journeys, each covered by its own bill of lading).

After this, the Unknown Party obtained control of the parts using ETL as cat's-paw. It did this by placing a false order with ETL, arranging for the parts to be shipped overseas, most likely either to the Unknown Party or its confederates, or to its customers who in turn paid the Unknown Party for the parts. Meadowgate was a stranger to this transaction, and has no remedy under a contract or bill of lading. For this journey, a second bill of lading or other transportation document would have been necessary.

In the first transaction, Meadowgate had no agreement or direct business relationship with ETL. As far as Meadowgate was concerned, it was dealing with a customer, not a second carrier. Meadowgate's claim arises from what ETL — a stranger to the first transaction — did with the parts after they arrived.

/ / /

---

[1] The FAC refers to them as carriers. It isn't clear they were carriers within the meaning of the Cormack Amendment, however. *See Treiber & Straub, Inc. v. U.P.S., Inc.*, 474 F.3d 379, 383 (7th Cir. 2007) (holding Carmack Amendment inapplicable to air carriers such as UPS).

If ETL had kept them and returned them on Meadowgate's demand, there would be no basis for a claim. But instead, ETL made them unavailable by sending them away. Meadowgate's argument is correct: ETL was not acting as a carrier with respect to this part of the transaction. Negligently disposing of misdelivered goods is a tort that could be committed by many different kinds of businesses. It may be that ETL is a carrier, but it could also have been some other kind of company. *See Richter v. N. Am. Van Lines, Inc.*, 110 F. Supp. 2d 406, 411 (D. Md. 2000) (opining that "torts that any person could commit at any time against another . . . have only the most incidental link with the contract to ship goods" and are thus not preempted).

Here, ETL might have been an entirely different kind of venture and might have disposed of the parts in any number of ways, by using them, destroying or discarding them, or sending them to someone else. If, for instance, ETL were a computer parts dealer, it might have sent the parts to customers overseas in much the same way, and there would be no real argument that the Carmack Amendment applied. The mere fact that a defendant is a carrier does not mean everything it does is done in that capacity.

At least one court has held that where a third party bringing a tort claim seeks to impose a common-law duty on a carrier, the claim is preempted. *See Eagle Transp., LLC v. Scott*, 2011 WL 2214812 at *4–*5 (S.D. Miss., June 7, 2011). This stems from Congress' intent that the Carmack Amendment set a national standard for carriers' common-law duties: "Congress intended by the Carmack Amendment to provide a uniform national remedy against carriers for breach of the contract of carriage, *including a liability for default in any common-law duty as a common carrier.*" *See Air Prods. & Chemicals, Inc. v. Ill. Central Gulf R.R. Co.*, 721 F2d 483, 487 (5th Cir. 1983) (emphasis added). *See also Adams*, 226 U.S. at 505 (discussing how the Carmack Amendment addressed a need for uniform standards for liability). Meadowgate's is seeking to impose a common law duty on ETL (*see* FAC, ¶¶ 19–23) could indicate that the claim is preempted.

Meadowgate points out that certain international shipments are not subject to the Carmack Amendment, under 49 U.S.C. § 14706(a). If the shipments are sent to non-

adjacent countries (which would include the U.K. and South Africa) under a through bill of lading,[2] they are not preempted. *See CNA Ins. Co. v. Hyundai Merchant Marine Co., Ltd.*, 747 F.3d 339, 366 (6th Cir. 2014) (citing *Kawasaki Kisen Kaisha Ltd. v. Regal-Beloit Corp.*, 561 U.S. 89 (2010)). ETL does not dispute that the parts were sent to non-adjacent countries, but argues Meadowgate never alleges they were sent under a through bill of lading, so as to forestall preemption. The complaint merely alleges "routing instructions." ETL argues that because it was a carrier and because the exemption under § 14706(a)(1) does not apply, Meadowgate's claims are preempted.

The FAC alleges that ETL is a motor carrier. (*See* FAC, ¶ 3 (alleging that ETL is a for-hire interstate motor carrier).) But Meadowgate now disputes that this means it is a carrier within the meaning of the Carmack Amendment with respect to this transaction, because it never actually transported the parts, and because it had no relationship with the shipper, Meadowgate.

In the second transaction, the shipper was not Meadowgate, but either the Unknown Party or Mitchell Brothers. In relation to that shipper, ETL was a carrier, if it provided the kinds of services a carrier provides. As Meadowgate points out, however, the FAC never says ETL transported the parts, only that it "shipped" them, without saying what that entailed. (FAC, ¶¶ 15, 21, 22, 23, 27, 29.)

**Conclusion and Order**

As the Plaintiff in this case, Meadowgate bears the burden of pleading facts to establish its claim. Meadowgate has not shown that he has any claims under state law. Accepting the FAC's factual pleadings as true, ETL may still have acted as a carrier with respect to the second transaction, and the parts may not have been sent out of the country on a through bill of lading. If either of those is true, the exception covering international shipments would not apply, and the Carmack Amendment would appear to govern Meadowgate's claim against ETL. Meadowgate will therefore be given to replead its claim

---

[2] A bill of lading that involves transport to or from a foreign country is called a "through" bill if it provides for transport both domestic and international transport.

or claims. It may either plead facts to show that the exception for international shipments applies here, or it may pursue its claims under the Carmack Amendment, which ETL concedes applies. Because pleading in the alternative is allowed, it could also do both. *See* Fed. R. Civ. P. 8(d)(2). Furthermore, exercising any of these options would not deprive the Court of jurisdiction.

The complaint is **DISMISSED WITHOUT PREJUDICE**. No later than **April 5, 2018**, Meadowgate may file an amended complaint that complies with this order. If Meadowgate needs more time to amend, it should file an *ex parte* motion showing good cause for the extension.

**IT IS SO ORDERED**.

DATED: March 19, 2018

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge