UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MEADOWGATE TECHNOLOGIES, LLC,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>FIASCO ENTERPRISES, INC. dba ENERGY TRANSPORT LOGISTICS,<br><br>　　　　　　　　　　　Defendant. | Case No.: 17CV230-LAB(KSC)<br><br>**ORDER RE: JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE [DOC. NO. 38.]** |

　　　　This case concerns cargo theft by an unknown party in which both parties were allegedly unwitting dupes. In August and September 2016, at plaintiff Meadowgate Technologies, LLC.'s ("Meadowgate") direction, three shipments of computer parts totaling $234,513.50, were delivered to an address in California. [Doc. No. 17.] At the time Meadowgate believed the purchase orders were placed by and being shipped to Battelle, one of Meadowgate's regular customers. In fact, the shipping address for the purchase orders was that of defendant Fiasco Enterprises, Inc. dba Energy Transport Logistics ("ETL"), and the orders were not placed by Battelle, but rather by an unknown third party. ETL, in turn, received routing instructions for the freight that it believed came from its customer, Mitchell Brothers Truck Line, and sent the cargo overseas to the U.K.,

South Africa, and other countries. Later it was discovered the instructions had not come from Mitchell Brothers, but from an unknown third party who apparently was behind the fraud.

The parties have since filed a Joint Motion for Determination of Discovery Dispute, pursuant to which ETL seeks to compel further discovery responses from Meadowgate. [Doc. No. 38] As explained below, ETL's Motion is GRANTED.

**Legal Standards re: Scope of Discovery**

"Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

If a party fails to answer written interrogatories or produce documents in response to written requests, the party seeking discovery may move for an order compelling disclosure. Fed. R. Civ. P. 37(a)(3)&(4). "While the party seeking to compel discovery has the burden of establishing that its request satisfies relevancy requirements, the party opposing discovery bears the burden of showing that discovery should not be allowed, and of clarifying, explaining, and supporting its objections with competent evidence." *Lofton v. Verizon Wireless (VAW) LLC*, 308 F.R.D. 276, 281 (N.D. Cal. 2015).

**Interrogatory No. 1 & Request for Production No. 1**

The parties' arguments regarding ETL's Interrogatory No. 1 and Request for Production No. 1 are substantially the same, so the Court addresses these two discovery requests together. In Interrogatory No. 1, ETL requests Meadowgate:

> Identify all ESI and electronic data as defined above, including purchase orders, fulfillment of those purchase orders, confirmations of the purchase orders, status notices of purchase orders and shipping instructions sent by Battelle to Meadowgate and by Meadowgate to Ingram Micro or other

fulfillment companies, together with all communications between Meadowgate and Battelle relating to those purchase orders for all transactions between Meadowgate and Battelle. from August 2013 through December 31, 2016. It is requested that those documents identified in Meadowgate's response be produced in accordance with the accompanying request for production.

[Doc. No. 38, p. 2. ETL's Request for Production No. 1 calls for

"[a]ll documents identified in Meadowgate's response to Interrogatory No. 1 for all transactions between Meadowgate and Battelle for purchase orders dating from August 1, 2013 through October 18, 2018.

*Id*. p. 3-4.

ETL has since narrowed the timeframe for which it seeks responsive information, and also dropped its request for information regarding "other fulfillment centers." On the other side, Meadowgate has produced some responsive documents, but only for the August-September 2016 time frame. The parties' dispute is now distilled to the discrete issue as to whether Meadowgate must produce responsive information and documents dating back to January 1, 2015.[1]

Meadowgate contends information regarding shipments other than the shipments that are the basis for this lawsuit are irrelevant and not proportional to the needs of the case. This information is, however, relevant to ETL's affirmative defense of comparative negligence. [Doc. No. 24.] As ETL explains, documents relating to purchase orders that

---

[1] In the Motion, Meadowgate cursorily argues, for the first time and without explanation, the information sought is confidential and proprietary. To the extent Meadowgate is now claiming this information is privileged, any such objection has been waived. When information is withheld based on an asserted privilege, the responding party must expressly claim the privilege and describe the nature of the documents, communications, or things not produced or disclosed in a manner that will enable other parties to assess the applicability of the privilege or protection. Fed. R. Civ. P. 26(b)(5)(A). The failure to make a timely and specific objection to a discovery request waives any objection based on privilege. See *Nguyen v. Excel Corp.* 197 F.3d 200, 208 (5th Cir. 1999). If this information is confidential and propriety, as Meadowgate now claims, the parties may jointly submit a proposed protective order, pursuant to the undersigned's Chambers Rules, for the Court's consideration.

were actually placed by Battelle (i.e. purchase orders that where made outside the August-September 2016 timeframe) are likely to show a shipping address that is different that the shipping address on the three fraudulent purchase orders. If so, this information may support ETL's argument that Meadowgate should have been more diligent in catching the discrepancy and, thus, was comparatively negligent in directing the purchase orders be shipped to ETL. Given the amount in controversy and Meadowgate's failure to identify any burden associated with producing said information, the limited time-frame requested by ETL (dating back to January 1, 2015) is also proportional to the needs of the case.

**Interrogatory No. 4 and Requests for Production Nos. 4, 13 and 14**

The second part of the parties' discovery Motion relates to a dispute regarding Interrogatory No. 4 and Requests for Production Nos. 4, 13 and 14. Meadowgate produced written responses to these requests on or around December 13, 2018, indicating it would produce any responsive documents in its possession. ETL now requests that any additional responsive documents be produced or, alternatively, Meadowgate provide an explanation that after a diligent search these documents either do not exist or cannot be located. Meadowgate reports it has no new documents to produce but maintains it may supplement its discovery responses.

ETL is entitled to some certainty as to whether Meadowgate has completed its production responsive to these discovery requests. Therefore, no later than **March 25, 2019,** Meadowgate's counsel shall produce an updated certification, pursuant to Fed. R. Civ. P. 26(g)(1)(A), certifying to the best of [his or her] knowledge, information, and belief formed after a reasonable inquiry that Meadowgate's response to these requests are complete and correct.

**IT IS SO ORDERED.**

Dated: March 11, 2019

_____
Hon. Karen S. Crawford
United States Magistrate Judge